RECEIVED
SEP 28 2017
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA
BY ______

(Rev. 5/1/13)

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
______ DIVISION

REV. QUINTEN M. MORAN. Civil Action No. 5:17-cv-1254 SEC. P
Plaintiff

Prisoner # 465482

VS. Judge ______

JAMES M. LEBLANC, ET AL. Magistrate Judge ______
Defendant

**COMPLAINT**
**PRISONER CIVIL RIGHTS UNDER 42 U.S.C. § 1983**

**I. Previous Lawsuits**

(a.) Have you begun any other lawsuit while incarcerated or detained in any facility?

Yes [✓] No [ ]

(b.) If your answer to the preceding question is "Yes," provide the following information.

1. State the court(s) where each lawsuit was filed (if federal, identify the District, if state court, identify the County or Parish):

   USDC, WESTERN DISTRICT OF LOUISIANA.

2. Name the parties to the previous lawsuit(s):

   Plaintiffs: REV. QUINTEN M. MORAN.

   Defendants: ANTONIO JOHNSON.

3. Docket number(s): N/A (UNKNOWN)

4. Date(s) on which each lawsuit was filed: ON OR ABOUT 04-11-2014.

5. Disposition and date thereof [For example, was the case dismissed and when? Was it appealed and by whom (plaintiff or defendant)? Is the case still pending?]:

   DISMISSED. DATE UNKNOWN.

(Rev. 5/1/13)

(c.) Have you filed any lawsuit or appeal in any federal district court or appeals court which has been dismissed?

Yes [ ] No [✓]

If your answer to the preceding question is "Yes," state the court(s) which dismissed the case, the civil action number(s), and the reason for dismissal (e.g., frivolity, malice, failure to state a claim, defendants immune from relief sought, etc.).

______________________________

______________________________

**II.** (a.) **Name of institution and address of current place of confinement:**

DAVID WADE CORRECTIONAL CENTER, 670 BELL HILL Rd., HOMER, LA 71040.

(b.) Is there a prison grievance procedure in this institution?

Yes [✓] No [ ]

1. Did you file an administrative grievance based upon the same facts which form the basis of this lawsuit?

   Yes [✓] No [ ]

2. If you did not file an administrative grievance, explain why you have not done so.

   ______________________________

   ______________________________

3. If you filed an administrative grievance, answer the following question. What specific steps of the prison procedure did you take and what was the result? (For example, for state prisoners in the custody of the Department of Public Safety and Corrections: did you appeal any adverse decision through to Step 3 of the administrative grievance procedure by appealing to the Secretary of the Louisiana Department of Public Safety and Corrections? For federal prisoners: did you appeal any adverse decision from the warden to the Regional Director for the Federal Bureau of Prisons, or did you make a claim under the Federal Tort Claims Act?)

   GRIEVANCES WERE FILLED FOR STEPS (1) - (3), HOWEVER, THEY WERE NEVER RESPONDED TO. (SEE "ATTACHMENT(S)" "A," "C")

   Attach a copy of each prison response and/or decision rendered in the administrative proceeding.

**III.** **Parties to Current Lawsuit:**

(a) Plaintiff, REVEREND QUINTEN M. MORAN. #465482

Address 670 BELL HILL Rd., HOMER, LOUISIANA 71040.

(b.) DEFENDANT, JAMES M. LEBLANC, is SECRETARY of THE LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS (HEREINAFTER "DEPARTMENT"). HE is RESPONSIBLE FOR THE policies of THE DEPARTMENT, AND FOR THE ADMINISTRATION, CONTROL, OPERATION of THE FUNCTIONS, PROCEDURES, AND AFFAIRS of THE DEPARTMENT, PURSUANT TO LOUISIANA REVISED STATUTE 36: 403. HE HAS ULTIMATE RESPONSIBILITY FOR THE OPERATION of THE "DAVID WADE CORRECTIONAL CENTER" AND THE "WINN CORRECTIONAL CENTER" BOTH THROUGH HIS PERSONAL INVOLVEMENT AND THROUGH TRAINING AND SUPERVISION of DEFENDANTS GOODWIN [redacted] AND DEVILLE. HE is SUED IN HIS official CAPACITY FOR DECLARATORY AND INJUNCTIVE RELIEF, AS WELL AS IN HIS PERSONAL CAPACITY FOR MONETARY RELIEF.

DEFENDANT, JAMES "KEITH" DEVILLE, is WARDEN of THE WINN CORRECTIONAL CENTER. HE is RESPONSIBLE FOR THE policy, PROCEDURES, OPERATIONS, AND ADMINISTRATIONS of WINN CORRECTIONAL CENTER. HE is SUED IN HIS official CAPACITY FOR DECLARATORY AND INJUNCTIVE RELIEF, AS WELL AS IN HIS PERSONAL CAPACITY FOR MONETARY RELIEF.

DEFENDANT, JERRY W. GOODWIN, is WARDEN of THE DAVID WADE CORRECTIONAL CENTER. HE is RESPONSIBLE FOR THE policy, PROCEDURES, OPERATIONS, AND ADMINISTRATIONS of DAVID WADE CORRECTIONAL CENTER. HE is SUED IN HIS official CAPACITY FOR DECLARATORY AND INJUNCTIVE RELIEF, AS WELL AS IN HIS PERSONAL CAPACITY FOR MONETARY RELIEF.

DEFENDANT, LONNIE NAIL, is A COLONEL AT DAVID WADE CORRECTIONAL CENTER, WHO EXERCISES CONTROL OVER ALL UNITS of THE FACILITY'S "SOUTH COMPOUND" AS ITS UNIT MANAGER. HE DIRECTLY EXERCISES AND EXECUTES THE AUTHORITY AND DECISIONS

MADE BY DEFENDANT GOODWIN, AND HE HAS PERSONALLY SET POLICY FOR THE SOUTH COMPOUND. DEFENDANT NAIL IS SUED IN HIS OFFICIAL CAPACITY FOR DECLARATORY AND INJUNCTIVE RELIEF, AS WELL AS IN HIS PERSONAL CAPACITY FOR MONETARY RELIEF.

DEFENDANT, JODY FLOYD, IS DEPUTY WARDEN OF THE WINN CORRECTIONAL CENTER, WHO EXERCISES CONTROL OF ALL UNITS OF THE COMPOUND. HE DIRECTLY EXECUTES THE DECISIONS MADE BY DEFENDANT DEVILLE, AND HAS PERSONALLY SET POLICY FOR THE ENTIRE COMPOUND. HE IS SUED IN HIS OFFICIAL CAPACITY FOR DECLARATORY AND INJUNCTIVE RELIEF, AS WELL AS IN HIS PERSONAL CAPACITY FOR MONETARY RELIEF.

DEFENDANT, BOBBY TOLER, IS CAPTAIN AT WINN CORRECTIONAL CENTER, WHO EXERCISES CONTROL OVER ALL UNITS OF THE COMPOUND. HE DIRECTLY EXECUTES THE DECISIONS MADE BY DEFENDANT DEVILLE AND/OR HIS DESIGNEE(S). HE IS SUED IN HIS OFFICIAL CAPACITY FOR DECLARATORY AND INJUNCTIVE RELIEF, AS WELL AS IN HIS PERSONAL CAPACITY FOR MONETARY RELIEF.

DEFENDANT, MICHEAL CORLEY, IS CAPTAIN AT WINN CORRECTIONAL CENTER, WHO EXERCISES CONTROL OVER THE "CYPRESS" LOCKDOWN UNIT. HE DIRECTLY EXECUTES THE DECISIONS MADE BY DEFENDANT DEVILLE AND/OR HIS DESIGNEE(S). HE IS SUED IN HIS OFFICIAL CAPACITY FOR DECLARATORY AND INJUNCTIVE RELIEF, AS WELL AS IN HIS PERSONAL CAPACITY FOR MONETARY RELIEF.

DEFENDANT, BROWN, IS LIEUTENANT AT WINN CORRECTIONAL CENTER. SHE EXERCISES CONTROL OF THE FACILITY'S TRANSPORTATION DEPARTMENT, AND EXECUTES THE DECISIONS MADE BY DEFENDANT DEVILLE AND/OR HIS DESIGNEE(S). SHE IS SUED IN HER OFFICIAL CAPACITY FOR DECLARATORY AND INJUNCTIVE RELIEF, AS

WELL AS IN HER PERSONAL CAPACITY FOR MONETARY RELIEF.

IV. STATEMENT OF CLAIM(S).

(a.) WINN CORRECTIONAL CENTER.

1.) ON APRIL 11TH, 2016, I WAS TRANSFERRED FROM THE ELAYN HUNTS CORRECTIONAL CENTER TO THE WINN CORRECTIONAL CENTER.

2.) ON OR ABOUT THE FIRST WEEK OF AUGUST 2016, DEFENDANT BOBBY TOLER AND SEVERAL OTHER EMPLOYEES AT THE WINN CORRECTIONAL CENTER (HEREINAFTER "WINN") WERE DIRECTLY INVOLVED IN AND RESPONSIBLE FOR THE DEATH OF OFFENDER, TIMOTHY DIVILLE.

3.) AN INVESTIGATION OF HIS DEATH WAS CONDUCTED, HOWEVER, BECAUSE CERTAIN MATERIAL FACTS WERE WITHHELD FROM THE INVESTIGATORS (E.G., "EYEWITNESS ACCOUNTS OF THE INCIDENT PRIOR TO HIS DEATH"), HIS DEATH WAS RULED A "DRUG-INDUCED HEART ATTACK.

4.) FOR THE MONTHS RANGING FROM AUGUST 2016 TO NOVEMBER 2016, DEFENDANTS BOBBY TOLER, MICHEAL CORLEY, AND SEVERAL OTHER EMPLOYEES AT WINN WERE RESPONSIBLE FOR NUMEROUS AGGRAVATED ASSAULTS AND BATTERIES AGAINST DEFENSELESS OFFENDERS, WHICH OFTEN RESULTED IN BROKEN BONES, BLOODY WOUNDS, AND SEVERAL OFFENDERS BEING TAKEN TO THE HOSPITAL FOR MEDICAL TREATMENT.

5.) IT WAS DURING THE MONTH OF NOVEMBER, THAT SEVERAL EMPLOYEES AND OFFENDERS BEGAN TO SEEK MY ADVICE AS A LICENSED AND ORDAINED MINISTER REGARDING POSSIBLE AVENUES THAT COULD BE TAKEN TO REMEDY THE GROSS INJUSTICES BEING COMMITTED AT WINN.

6.) HAVING ALREADY SENSED THE NEED TO DO SOMETHING, I BEGAN A COMPAIGN, "QUIETLY" GARNERING SUPPORT FROM OFFENDERS AND EMPLOYEES, BOTH OF WHICH HAD BEEN VICTIMS IN SOME WAY OR ANOTHER TO THE INJUSTICES COMMITTED BY THE DEFENDANTS DIRECTLY RELATED TO WINN, AS NAMED HEREIN THIS COMPLAINT.

7.) IT WAS NOT LONG THEREAFTER THAT ONE OF THE SUPPOSED "SUPPORTERS" DEFECTED, AND MADE SOMEONE WITHIN THE ADMINISTRATION PRIVY TO MY PURSUIT OF SEEKING ASSISTANCE FROM THE "U.S. DEPARTMENT OF JUSTICE, CIVIL RIGHTS DIVISION, SPECIAL LITIGATION SECTION" BY WAY OF A FORMAL COMPLAINT.

8.) I THEN BECAME THE VICTIM OF A FRAUDULENT DISCIPLINARY REPORT, OF WHICH, I WAS FOUND GUILTY AFTER BEING DENIED MY CONSTITUTIONALLY PROTECTED RIGHT TO PROCEDURAL DUE PROCESS BY WAY OF AN IMPROPERLY CONDUCTED DISCIPLINARY HEARING, SOMETIME IN THE MONTH OF DECEMBER, 2016.

9.) I IMMEDIATELY APPEALED THE RESULTS OF THE DISCIPLINARY HEARING TO THE WARDEN, WHO SUBSEQUENTLY DENIED MY APPEAL.

10.) IT WAS IN THE SAME MONTH OF DECEMBER 2016, THAT ANOTHER OFFENDER WAS BEATEN TO DEATH, WITH DEFENDANTS TOLER AND CORLEY BEING DIRECTLY INVOLVED.

11.) COINCIDENTALLY, WITHIN THE MONTHS OF AUGUST 2016 TO DECEMBER 2016, I HAD SEVERAL FACE-TO-FACE ENCOUNTERS WITH DEFENDANT DEVILLE, SPEAKING WITH REGARDS TO CERTAIN ISSUES RELATIVE TO WINN, AND HOW "WE NEEDED TO "GUARD OUR INTEGRITY" (AGAINST THE SPIRITUAL POWERS THAT BE) AS CHRISTIANS.

12.) IT WAS ON TUESDAY, JANUARY  2017, THAT DEFENDANT MICHEAL CORLEY APPROACHED ME AND STATED, "SOMEONE ON YOUR TRAIL," MEANING THAT "SOMEONE" WAS "AFTER ME TO DO ME SOME TYPE of HARM."

13.) I jokingly REPLIED, "I'M PROBABLY ON THEIR TRAIL, TOO!"

14.) DEFENDANT CORLEY THEN STATED THAT HE "DOUBTED IT," BECAUSE "IT'S SOMEONE FROM HIGHER UP," PRESUMABLY REFERRING TO SOMEONE EITHER WITH RANK (e.g., "A LIEUTENANT OR HIGHER") OR WITHIN ADMINISTRATION.

15.) THE NEXT DAY, THERE WAS A FACILITY-WIDE "SHAKEDOWN," WHICH RESULTED IN ME BEING LOCKED UP ON ADMINISTRATIVE SEGREGATION FOR ALLEGEDLY BEING IN POSSESSION of A HAND-MADE WEAPON.

16.) I APPEALED THE DISPOSITION of THE DISCIPLINARY BOARD, REQUESTING DEFENDANT DEVILLE TO REVIEW THE "PELCO SECURITY CAMERA SYSTEM" WHICH WOULD SHOW THAT NOTHING WAS ACTUALLY CONFISCATED FROM MY IMMEDIATE AREA DURING THE SHAKEDOWN IN QUESTION.

17.) DEFENDANT DEVILLE DECLINED TO REVIEW THE CAMERA SYSTEM, AND ALSO DENIED MY APPEAL.

18.) IN AN APPROXIMATE SEVENTY (70) DAY TIME FRAME, RANGING FROM DECEMBER 16TH, 2016 TO FEBRUARY 23RD, 2017 I RECEIVED ELEVEN (11) FALSIFIED DISCIPLINARY REPORTS, AND WAS SANCTIONED ON ALL of THEM REGARDLESS of CONCRETE EVIDENCE TO THE CONTRARY THAT WAS OFTENTIMES PROFFERED IN MY DEFENSE.

19.) AS A RESULT of BECOMING A VICTIM TO A CONSPIRACY

AGAINST MY CONSTITUTIONALLY AND STATUTORILY PROTECTED RIGHTS AND CIVIL LIBERTIES, I HAVE SUFFERED THE ANGUISH of IRREPARABLE LOSSES, INCLUDING BUT NOT LIMITED TO, MY ELIGIBILITY TO APPLY FOR CLEMENCY (i.e., "EXECUTIVE PARDON BY CLEMENCY"), MY MARRIAGE of (5) YEARS, MY IRREPROACHABLE REPUTATION FOR "PRACTICING WHAT I PREACH," THE RESPECT of MY RELIGIOUS CONTEMPORARIES, AND THE RIGHT TO GET A GOOD NIGHT'S REST WITHOUT FEARING ANY HARM FROM THOSE IN AUTHORITY OVER ME AND MY WELL-BEING.

20.) AFTER SEVERAL ATTEMPTS TO ALERT THE DEPARTMENT of CORRECTIONS SECRETARY, DEFENDANT, JAMES M. LEBLANC, OF THE NUMEROUS INFRINGEMENTS AGAINST MY CIVIL RIGHTS, ALONG WITH SEVERAL WRITTEN REQUESTS TO DEFENDANT, JAMES "KEITH" DEVILLE, TO BE TRANSFERRED TO ANOTHER FACILITY SO I COULD "SAFELY" FILE A GRIEVANCE TO THE PROPER FEDERAL AUTHORITIES, I WAS MOVED TO THE SOUTHERN CORRECTIONAL CENTER ON MARCH 31ST, 2017.

* SEE, ATTACHMENTS #2 (A)(B)

21.) THE MORNING of MARCH 31ST, 2017, I WAS ESCORTED TO THE FACILITY'S INFIRMARY BY AN OFFICER IDENIFIED AS "SGT. BUBBA."

22.) WHILE BEING ESCORTED TO THE INFIRMARY, I QUESTIONED "SGT. BUBBA" REGARDING ME RETRIEVING MY PERSONAL PROPERTY OUT OF THE FACILITY'S PROPERTY ROOM, WHERE OFFENDERS PLACED IN CELL CONFINEMENT HAVE THEIR PROPERTY STORED UNTIL THEY ARE RELEASED BACK INTO GENERAL POPULATION OR TRANSFERRED.

23.) "SGT. BUBBA" SAID HE DIDN'T KNOW FOR CERTAIN, BUT ASSUMED THAT "IT'S PROBABLY WAITING IN THE INFIRMARY OR SOMETHING."

24.) UPON ARRIVING AT THE INFIRMARY, "SGT. BUBBA" AND I WERE MET BY LIEUTENANT BROWN, A DEFENDANT IN THIS SUIT, AND ANOTHER UNIDENIFIED "SERJEANT," WHO LATER JOINED US ALSO.

25.) I QUESTIONED "LT. BROWN" AND THE UNKNOWN SERJEANT REGARDING MY PERSONAL PROPERTY, AND WAS TOLD "YOU'LL GET IT WHEN THEY SEND IT WHERE YOU'RE GOING."

26.) AFTER I ADVISED DEFENDANT BROWN AND THE UNKNOWN SERJEANT THAT IT WAS CONTRARY TO FACILITY POLICY TO TRANSFER ME WITHOUT MY PROPERTY, THEY BOTH STATED THAT THE "PROPERTY ROOM SUPERVISOR" WAS NOT AT WORK YET," AND BOTH THREATENED TO "SPRAY" ME WITH CHEMICAL AGENT IF I DIDN'T "SHUT UP!"

27.) AROUND THE SAME TIME, DEFENDANT TOLER WALKED INTO THE INFIRMARY, JOINING DEFENDANT BROWN, "SGT. BUBBA," THE UNIDENIFIED SERJEANT, AND MYSELF IN THE BACK LOBBY.

28.) I IMMEDIATELY ADDRESSED DEFENDANT TOLER ABOUT THE SITUATION, BUT WAS INTERRUPTED BY DEFENDANT BROWN WHO SAID THAT SHE HAD ALREADY ANSWERED MY QUESTION CONCERNING MY PROPERTY AND THAT I WAS JUST BEING "STUPID."

29.) AS I CONTINUED TO TRY TO EXPLAIN THE SITUATION, DEFENDANT TOLER TOLD ME TO "HUSH UP, AND SIT DOWN," WHILE WAVING HIS HAND IN MY FACE.

30.) I WAS THEN PLACED ON THE TRANSPORTATION VAN, AND DRIVEN TO THE SOUTHERN CORRECTIONAL CENTER.

31.) THE TIME WAS 08:24 A.M.

32.) UPON MY ARRIVAL AT SOUTHERN CORRECTIONAL CENTER, I IMMEDIATELY QUESTIONED A "LIEUTENANT REED" AND A "CAPTAIN SMITH" REGARDING MY PROPERTY.

33.) I WAS TOLD THAT THEY COULD NOT SAY FOR CERTAIN, BUT "WINN'LL PROBABLY SEND IT TO YOU, MORAN."

34.) IT WAS ON APRIL 06TH, 2017, THAT I WAS ABLE TO SPEAK WITH "CHAPLAIN DOYLE" WHO I HAD BECOME ACQUAINTED WITH WHILE STILL AT WINN.

35.) I ADVISED CHAPLAIN DOYLE THAT I HAD SENT DEPUTY WARDEN JOHN TOFTON OF S.C.C. A REQUEST TO LOOK INTO THE SITUATION AS OF APRIL 03RD, 2017.

36.) CHAPLAIN DOYLE STATED THAT HE WOULD "TEXT" HIM AND LET HIM KNOW.

37.) IT WAS LATER ON THAT DAY (04-06-2017), THAT I WAS CALLED TO THE "CONTROL KEY" BY CHAPLAIN DOYLE, WHO READ A TEXT FROM DEPUTY WARDEN TOFTON, STATING, "YEAH, I KNOW HIM. GOOD GUY. TELL HIM THAT I'M PUTTING A PLAN TOGETHER NOW TO GET HIS PROPERTY TO HIM."

38.) AFTER NO FURTHER NOTICE WAS RECEIVED FROM DEPUTY WARDEN TOFTON OR FROM WINN REGARDING MY PROPERTY, I ATTEMPTED TO FILE AN A.R.P. DIRECTLY TO THE DEPARTMENT OF CORRECTIONS ON APRIL 19TH, 2017. (SEE, "ATTACHMENT #2 (C)").

39.) ON APRIL 24TH, 2017, I WAS TRANSFERRED AGAIN TO THE ELAYN HUNTS CORRECTIONAL CENTER. (SEE, "ATTACHMENT #2(E)").

40.) AFTER SEVERAL ATTEMPTS BY "ASSISTANT WARDEN BARRERE" OF ELAYN HUNTS CORRECTIONAL CENTS ("HUNTS"), TO RETRIEVE MY PROPERTY, IT WAS TOLD TO ME BY MR. BARRERE,

"I FINALLY GOT WITH WINN... WELL, MY SECRETARY DID, AND THEY SAY THEY LOOKED FOR IT AND COULDN'T FIND IT!"

41.) I HAVE SUFFERED INCALCULABLE LOSS AS A RESULT OF THE DELIBERATE INDIFFERENCE OF DEFENDANTS LEBLANC, DEVILLE, FLOYD, TOLER, CORLEY, BROWN, AND THE OTHER UNIDENTIFIED SERJEANT WHO ASSISTED DEFENDANT ESCORT ME FROM WINN.

42.) ON JUNE 12TH, 2017, I WAS TRANSFERRED AGAIN TO THE DAVID WADE CORRECTIONAL CENTER, HAVING LOSS ALL OF MY PROPERTY AT THE HANDS OF THE ABOVENAMED DEFENDANTS.

(b.) DAVID WADE CORRECTIONAL CENTER.

43.) AFTER ARRIVING AT D.W.C.C., I WAS IMMEDIATELY PLACED ON ADMINISTRATION SEGREGATION BY THE "CLASSIFICATION BOARD," BECAUSE "MY RECORDS DIDN'T FOLLOW ME."

44.) ON THE NIGHT OF JUNE 15TH, 2017, I WAS ADVISED THAT I WAS BEING RE-ASSIGNED FROM ADMINISTRATIVE SEG. TO DISCIPLINARY DETENTION/EXTENDED LOCKDOWN.

45.) I FILED AN A.R.P. THE SAME NIGHT. (SEE, "ATTACHMENT # 3(A)").

46.) ON JUNE 16TH, 2017, I ATTEMPTED TO CONTACT THE U.S. DEPARTMENT OF JUSTICE REGARDING THE VARIOUS CIVIL RIGHTS VIOLATIONS (I) SUFFERED WHILE AT WINN, AND EVEN AFTER I LEFT (I AND OTHER OFFENDERS, ALSO). (SEE, "ATTACHMENT # 3(B)").

47.) MY A.R.P. WAS ACCEPTED ON JUNE 21ST, 2017. (SEE, ATTACHMENT # 3(C)").

48.) ON JULY 03RD, 2017, I RECEIVED A RESPONSE TO MY A.R.P. REGARDING BEING PLACED ON "EXTENDED

LOCKDOWN. (SEE, "ATTACHMENT # 3(D)").

49.) IN THEIR RESPONSE, DEFENDANT JERRY W. GOODWIN AND HIS DESIGNEES MARK HUNTER AND ANGIE HUFF, CLAIMED MY PLACEMENT ON EXTENDED LOCKDOWN WAS NOT A DENIAL OF MY RIGHT TO PROCEDURAL DUE PROCESS, DUE TO PREVIOUS DISCIPLINARY REPORTS RECEIVED, NAMELY, FROM WINN. (SEE, "ATTACHMENT # 3 (D)").

50.) I OPTED TO PROCEED FURTHER TO THE "SECOND STEP," ARGUING THAT "THERE WERE 'UNUSUAL CIRCUMSTANCES' LEADING UP TO THESE 'ALLEGED' INFRACTIONS," THAT THE WRITE-UP FROM "HUNTS" WAS NEVER DISPOSED OF WITH A RENDERING OF "GUILTY" OR "NOT GUILTY," AND FURTHER REITERATING THAT FACT THAT MY PLACEMENT ON EXTENDED LOCKDOWN WAS A VIOLATION OF MY RIGHT TO PROCEDURAL DUE PROCESS AND MY RIGHT AGAINST CRUEL, UNUSUAL, AND EXCESSIVE PUNISHMENTS. (SEE, "ATTACHMENT # 3 (E)").

51.) THIS REQUEST TO PROCEED TO THE "SECOND STEP" WAS SENT ON July 11, 2017. (SEE, "ATTACHMENT # 3 (F)").

52.) NOT ONLY HAS DEFENDANT LEBLANC REFUSED TO RESPOND WITHIN THE FORTY-FIVE (45) DAY TIME LIMITATION SET BY D.O.C. REGULATION AND CODIFIED WITHIN LOUISIANA REVISED STATUTES, BUT BECAUSE OF THE DELIBERATE INDIFFERENCE OF DEFENDANTS LEBLANC, NAIL, AND GOODWIN, I HAVE HAD TO CONTINUE SUFFERING THE ONUS OF CIVIL RIGHTS VIOLATIONS, AND HAVE DEVELOPED SEVERAL HEALTH ISSUES RANGING FROM HYPERTENSION TO SKIN FUNGUS, AS WELL AS EXTREME WEIGHT LOSS AND DEPRESSION.

53.) IN ADDITION, I BELIEVE A MAJOR FACTOR CONTRIBUTING

TO MY PHYSICAL AILMENTS IS THE WATER WITHIN THE CELLBLOCKS, WHICH IS CONTAMINATED WITH A RUSTIC-COLORED SUBSTANCE, THE LACK OF PROPER EXERCISE OPPORTUNITIES AS MANDATED BY FEDERAL LAW, AND THE STRESS CAUSED BY THE DEPRESSIVE AND OPPRESSIVE CONDITIONS, BEING LOCKED UP UNJUSTLY AND SUBJUGATED TO AN ENVIRONMENT THAT'S ANTI-CONDUCIVE TOWARDS POSITIVITY. THESE THINGS HAVE BEEN ADDRESSED TO AND IGNORED BY DEFENDANT LONNIE NAIL.

V. CAUSE OF ACTION — 42 U.S.C. 1983.

(a.) PLAINTIFF REALLEGES THE MATTERS SET FORTH ABOVE IN PARAGRAPHS 1-42.

(b.) PLAINTIFF HAS BEEN THE VICTIM OF SEVERAL CIVIL RIGHTS VIOLATIONS, CONSPIRACY AGAINST RIGHTS, AND HAS SUFFERED THE LOSS OF HIS PERSONAL PROPERTY, HEALTH, AND RESPECT.

(c.) PLAINTIFF REALLEGES THE MATTERS SET FORTH ABOVE IN PARAGRAPHS 43-53.

(d.) PLAINTIFF HAS BEEN, AND STILL IS, THE VICTIM OF A DENIAL OF HIS RIGHT TO PROCEDURAL DUE PROCESS, AS WELL AS A DENIAL OF HIS RIGHT AGAINST CRUEL, UNUSUAL, AND EXCESSIVE PUNISHMENTS, AND HAS SUFFERED THE LOSS OF HIS HEALTH AND RESPECT.

VI. PRAYER FOR RELIEF.

WHEREFORE, PLAINTIFF REQUESTS THAT THIS COURT:

A.) DECLARE DEFENDANTS LEBLANC, DEVILLE, FLOYD, TOLER, CORLEY, BROWN, GOODWIN, AND NAIL TO BE IN VIOLATION OF FEDERAL PROVISIONS OF LAW WHICH PROTECT THE CIVIL RIGHTS OF THE PLAINTIFF.

B.) DECLARE PLAINTIFF MORAN TO HAVE SUFFERED SUBSTANTIAL LOSS IN THE FORM of [redacted] MONETARY AND NON-MONETARY DAMAGES, AND AS A RESULT, TO BE ENTITLED TO DECLARATORY, INJUNCTIVE, AND MONETARY RELIEF.

C.) GRANT PLAINTIFF PRELIMINARY AND PERMANENT INJUNCTIONS.

D.) PRELIMINARILY AND PERMANENTLY ENJOIN DEFENDANTS FROM DENYING PLAINTIFF HIS CONSTITUTIONALLY PROTECTED CIVIL RIGHTS.

E.) ORDER DEFENDANTS TO PAY ONE MILLION SIX-HUNDRED THOUSAND ($1.6 MILLION) DOLLARS IN COMPENSATORY RELIEF FOR ACTUAL, [redacted] COLLATERAL AND/OR PROSPECTIVE DAMAGES.

F.) ORDER ANY OTHER AND FURTHER RELIEF, BOTH LEGAL AND EQUITABLE, TO WHICH PLAINTIFF MAY BE ENTITLED.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

EXECUTED ON SEPTEMBER 10TH, 2017.

/s/ REV. [signature]

REV. QUINTEN M. MORAN,
PLAINTIFF.

SEPTEMBER 10TH, 2017.

DEAR CLERK:

PLEASE FIND ENCLOSED (1) MOTION FOR IN FORMA PAUPERIS & (1) 42 U.S.C. 1983 CIVIL COMPLAINT.

RECEIVED

SEP 28 2017

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA
BY

THANKS,

REV. [signature]