# UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF LOUISIANA

# SHREVEPORT DIVISION

| | |
|---|---|
| **QUINTEN M. MORAN** | **CIVIL ACTION NO. 17-1254-P** |
| **VERSUS** | **JUDGE FOOTE** |
| **JAMES M. LEBLANC, ET AL.** | **MAGISTRATE JUDGE HORNSBY** |

## REPORT AND RECOMMENDATION

In accordance with the standing order of this court, this matter was referred to the undersigned Magistrate Judge for review, report and recommendation.

## STATEMENT OF CLAIM

Before the court is a civil rights complaint filed in forma pauperis by pro se plaintiff Quinten M. Moran ("Plaintiff"), pursuant to 42 U.S.C. § 1983. This complaint was received and filed in this court on September 28, 2017. Plaintiff is incarcerated at the Elayn Hunt Correctional Center, but claims his civil rights were violated by prison officials at Winn Correctional Center, Southern Correctional Center, and David Wade Correctional Center. He names James M. LeBlanc, James Keith Deville, Jerry W. Goodwin, Lonnie Nail, Jody Floyd, Bobby Toler, Michael Corley, Lt. Brown, and Unknown Sergeant as defendants.

Plaintiff claims that on April 11, 2016, he was transferred to Winn Correctional Center. He claims that in August of 2016, Bobby Toler and several other employees were directly involved in the death of inmate Timothy DiVille. He claims Timothy DiVille's

death was ruled a drug induced heart attack because material facts were withheld from the investigators.

Plaintiff claims that from August of 2016 to November of 2016, Bobby Toler, Michael Corley, and several other employees were responsible for numerous aggravated assaults and batteries against defenseless inmates. He claims the inmates suffered broken bones and bloody wounds. He claims several inmates had to be transported to the hospital for medical treatment. Plaintiff claims that in December of 2016, Toler and Corley were directly involved in the beating death of another inmate.

Plaintiff claims that in November of 2016, several employees and inmates sought his advice regarding a remedy to these gross injustices because he is a licensed and ordained minister. He claims one of his alleged supporters informed the administration that he was seeking assistance from the US Department of Justice.

Plaintiff claims that in December of 2016, he was the victim of a false disciplinary report. He claims he was found guilty of violating Rule #24 and sentenced to eight weeks loss of yard and recreation and eight weeks loss of phone. He claims he was denied procedural due process in the disciplinary process because his hearing was improperly conducted.[1] Plaintiff claims his disciplinary appeal was denied.

Plaintiff claims that in January of 2017, Corley told him that someone was after him and intended to do him harm. He claims that the following day, there was a facility-

---

[1] Plaintiff specifically claims he was denied due process in the disciplinary proceedings regarding this disciplinary conviction and sentence. He makes no such claims regarding the denial of due process as to his other disciplinary convictions and sentences.

wide shakedown. He claims he was found to be in possession of a handmade weapon and was placed in administrative segregation. He claims he was found guilty of violating Rule #1 and sentenced to 30 days extended lock-down and forfeiture of good time credits. Plaintiff claims he appealed the disposition of the disciplinary board and requested that the security video of the weapon confiscation be reviewed. He claims the security footage was not reviewed and his appeal was denied. Plaintiff claims he was innocent.

Plaintiff claims that on February 20, 2017, he was found guilty of aggravated disobedience for allegedly refusing to back away from the bars after being given a direct verbal order. He claims he was sentenced to 15 days cell confinement and 12 days loss of phones. He claims he was innocent.

Plaintiff claims that on February 21, 2017, he received a rule violation report for defiance because he allegedly attempted to intimidate the disciplinary board by advising them that they were denying him his right to due process because they did not record the February 20, 2017 disciplinary hearing. He claims he was found guilty and sentenced to 20 days of cell confinement and 12 weeks loss of phone. He claims he was innocent.

Plaintiff claims that on February 23, 2017, he was accused of aggravated disobedience for allegedly disobeying a direct verbal order. He claims he was found guilty and sentenced to 30 days cell confinement and 12 weeks loss of phone. He claims he was innocent. Plaintiff claims he was also accused of property destruction. He claims he was innocent of the accusation.

Plaintiff claims that from December 16, 2016 until February 23, 2017, he received 11 false disciplinary reports. He claims he was convicted and sentenced as to each report.

Plaintiff claims that on February 26, 2017, he was sprayed with a chemical agent because he asked for a spoon. He claims he was charged with aggravated disobedience and was found guilty and sentenced to 12 weeks loss of yard/recreation and 12 weeks loss of phone. He claims he was innocent. He claims he was also charged with property destruction and was found guilty and sentenced to 15 days cell confinement and restitution. He claims he was innocent.

Plaintiff claims that on March 4, 2017, he was accused of general prohibited behavior for allegedly singing too loudly. He claims he was found guilty and sentenced to 12 weeks loss of phone and 12 weeks loss of yard/recreation. He claims he was innocent.

Plaintiff claims that on March 11, 2017, he was accused of general prohibited behavior – threatening security when he asked for an ARP. He claims he was found guilty and sentenced to 20 days isolation and 12 weeks loss of yard/recreation. He claims he was innocent. He claims he was also accused of unsanitary practice for refusing a shower. He claims he found guilty and sentenced to 8 weeks loss of phone and 8 weeks loss of yard/recreation.

Plaintiff claims that he received the disciplinary reports because he opposed the mistreatment of other prisoners at Winn Correctional Center. He claims the disciplinary reports are fraudulent. Plaintiff claims that he had no write-ups for the prior eight months leading up to these charges. Plaintiff claims he has lost the right to apply for clemency, his marriage, and his reputation. He claims he is unable to sleep because he is in fear of being harmed.

Plaintiff claims that on March 31, 2017, he was transferred to the Southern Correctional Center. He claims Sgt. Bubba escorted him to the infirmary and he questioned Sgt. Bubba about retrieving his personal property from the property room. Plaintiff claims that while at the infirmary, he questioned Lt. Brown about his personal property. He claims he was told that he would receive his property when he was transferred. He claims that when he continued to ask questions about his property, Brown and a sergeant threatened to spray him with a chemical agent if he did not stop. Plaintiff claims Sgt. Toler then entered the infirmary, and he asked him about his property. He claims Brown interrupted him and said that she had already answered his question. Plaintiff claims that as he attempted to explain his situation, Toler told him to sit down and be quite as he waived his hand in his face.

Plaintiff claims he was then transported to the Southern Correctional Center. He claims that upon his arrival, he questioned Lt. Reed and Cpt. Smith about his property. He claims they told him that his property had probably been sent to him.

Plaintiff claims that on April 6, 2017, he informed Chaplain Doyle that he had requested that Warden Tofton investigate the situation. Plaintiff claims Doyle contacted Tofton and he told him that he was working on a plan to get his property to him.

Plaintiff claims that on April 19, 2017, he attempted to file a grievance in the administrative remedy procedure directly to the Louisiana Department of Corrections. Plaintiff claims that on April 24, 2017, he was transferred to Elayn Hunt Correctional Center. He claims Assistant Warden Barrere informed him that Winn Correctional Center could not find his property.

Plaintiff claims that on June 12, 2017, he was transferred to David Wade Correctional Center. He claims he was immediately placed on administrative segregation because his records did not follow him. He claims that on June 15, 2017, he was reassigned to disciplinary detention/extended lockdown. He claims he immediately filed a grievance in the administrative remedy procedure.

Plaintiff claims that on July 3, 2017, he received a response to his grievance. Plaintiff claims Jerry Goodwin, Mark Hunter, and Angie Huff claimed his placement on extended lock-down was based on his previous disciplinary reports from Winn Correctional Center and therefore did not violate his due process rights. Plaintiff claims he proceeded to the second step of the grievance procedure on July 11, 2017. He claims that because he did not receive a response to his grievance within the 45-day period, he continued to suffer and developed medical issues including hypertension, skin fungus, weight loss, and depression.

Plaintiff believes a major factor contributing to his health problems is the water within the cellblocks. He claims the water is contaminated with a rust colored substance. He claims he has developed a skin fungus as a result of the contaminated water. He also claims he is being denied proper exercise opportunities. He claims he is restricted to his cell for 23 hours and 50 minutes each day. He claims he is only allowed ten minutes a day to shower. Plaintiff claims that because he is on restricted yard/recreation for several months at a time, he only receives outside recreational opportunities in an isolated area for 50 minutes on weekends if there is available staff. He claims he is prevented from enjoying outside exercise because of inadequate staffing. He claims he has developed

depression because of the prolonged deprivation of outside exercise and the highly restrictive conditions he endures for an indefinite time.

Accordingly, Plaintiff seeks monetary, injunctive, and declaratory relief.

## LAW AND ANALYSIS

**Disciplinary Reports**

Plaintiff claims that from December 16, 2016 to February 23, 2017, he received 11 false disciplinary reports. He claims he received three false disciplinary reports because he opposed the mistreatment of other prisoners. Plaintiff has no right which protects him from being charged with a disciplinary offense. This is true regardless of the truth of the initial report. Freeman v. Rideout, 808 F.2d 949, 952 (2nd Cir. 1986); Hanrahan v. Lane, 747 F.2d 1137, 1140-41 (7th Cir. 1984); Cardine v. Tucker, 23 F.3d 406 (Table), 1994 U.S. App. LEXIS 17566 (6th Cir. 1994). Accordingly, in the instant case, even if the actions of Defendants resulted in false disciplinary action being taken against him, Plaintiff's claim against them is not cognizable because he has no constitutional protection from being wrongly charged with a disciplinary offense.

Accordingly, Plaintiff claims regarding false disciplinary reports should be dismissed with prejudice as frivolous.

**Due Process**

Plaintiff claims that in December of 2016, he was found guilty of violating Rule #24 and sentenced to eight weeks loss of yard and recreation and eight weeks loss of phone. He claims he was denied procedural due process in the disciplinary process. To

Page 7 of 19

the extent Plaintiff contends he was punished without due process, that claim is not cognizable.

In Sandin v. Connor, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court clarified when due process protections attach to the prison disciplinary process. The Supreme Court held that the Due Process Clause of the Fourteenth Amendment does not afford an inmate a protected liberty interest that would entitle the inmate to procedural protections in the disciplinary process when the maximum sanction the inmate could receive does not "present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest" and the duration of the prisoner's original sentence is not affected. Id. 132 L.Ed.2d at 431.

Under the guidance provided by Sandin, the Fifth Circuit has held that as a general rule, only sanctions which result in loss of good time credit or which otherwise directly and adversely affect release will implicate a constitutionally protected liberty interest. Orellana v. Kyle, 65 F.3d 29, 31-32 (5th Cir. 1995). Moreover, in commenting on Sandin, the Fifth Circuit noted that liberty interests which are protected by the Due Process Clause are generally limited to actions which affect the quantity of time rather than the quality of time served by a prisoner. Madison v. Parker, 104 F.3d 765, 767 (5th Cir. 1997) citing Sandin, 115 S.Ct. at 2297.

Plaintiff does not allege that the disciplinary action affected the duration of his sentence or that the disciplinary sentence was atypical of the prison environment. To the contrary, Plaintiff's allegations concern the conditions of his confinement which are far from "extraordinary." This court finds that under Sandin, Orellana and Madison,

Plaintiff's allegations regarding his sentence of eight weeks loss of yard and recreation and eight weeks loss of phone does not constitute the type of atypical punishment that presents a significant deprivation which would implicate due process concerns.

Accordingly, Plaintiff's due process claim lack an arguable basis in law and should be dismissed with prejudice as frivolous.

**Heck Claim**

Plaintiff claims that from December 16, 2016 to February 23, 2017, he received 11 false disciplinary reports and was convicted and sentenced as to each report. Plaintiff claims that in January of 2017, he was found guilty of violating Rule#1 and sentenced to 30 days extended lock-down and forfeiture of good-time credits. Plaintiff claims that on February 20, 2017, he was convicted of aggravated disobedience and sentenced to 15 days cell confinement and 12 days loss of phone. Plaintiff claims that in February of 2017, he was convicted of defiance and sentenced to 20 days of cell confinement and 12 weeks loss of phone. Plaintiff claims that in February of 2017, he was convicted of aggravated disobedience and sentenced to 30 days cell confinement and 12 weeks loss of phone. Plaintiff claims that in February of 2017, he was convicted of aggravated disobedience and sentenced to 12 weeks loss of yard and recreation and 12 weeks loss of phone. He also claims he was convicted of property destruction and sentenced to 15 days cell confinement and restitution. Plaintiff claims that in March of 2017 he was convicted of general prohibited behavior and sentenced to 12 weeks loss of phone and 12 weeks loss of yard and recreation. Plaintiff claims that in March of 2017, he was convicted of general prohibited behavior and sentenced to 20 days isolation and 12 weeks loss of yard and

recreation. He claims he was also convicted of unsanitary practice and sentenced to eight weeks loss of phone and eight weeks loss of yard and recreation.

Plaintiff is seeking monetary, declaratory, and injunctive relief for allegedly unconstitutional disciplinary board convictions and sentences. The United States Supreme Court held that in order to recover damages for an allegedly unconstitutional conviction or sentence or for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid," a prisoner must show that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas." Heck v. Humphrey, 512 U.S. 477, 486-87, 114 S.Ct. 2364, 2372 (1994).

Courts have also extended the holding in Heck to claims seeking injunctive or declaratory relief pursuant to 42 U.S.C. § 1983. See Edwards v. Balisok, 520 U.S. 641, 648, 117 S.Ct. 1584, 1589, 137 L.Ed.2d 906 (1997); Clark v. Stalder, 154 F.3d 186, 190-91 (5th Cir. 1998). Heck involved a civil rights claim brought by a state prisoner. The Court dismissed the Section 1983 suit until plaintiff could demonstrate that his conviction or sentence had been invalidated. In Edwards v. Balisok, 520 U.S. 641, 117 S.Ct. 1584 (1997), the Supreme Court approved the application of the Heck doctrine to prison disciplinary proceedings.

When a claim comes within the parameters of the Heck teachings, it is not cognizable under 42 U.S.C. § 1983 so long as the validity of the conviction or sentence has not been called into question as defined therein, which requires dismissal of claims

not meeting its preconditions for suit. See Johnson v. McElveen, 101 F.3d 423, 424 (5th Cir. 1996).

Plaintiff is seeking monetary, declaratory, and injunctive relief for civil rights violations under Section 1983; therefore, he must prove that his disciplinary board convictions and/or sentences have been invalidated. He has not met this precondition and his claims must be dismissed until such time that he can demonstrate that his disciplinary board convictions and/or sentences have been invalidated.

**Verbal Threats and Harassment**

Plaintiff alleges that he was subjected to verbal abuse and harassment. He claims Lt. Brown and another officer threatened to spray him with a chemical agent if he did not stop asking questions about his property. He claims Sgt. Toler waived his hand in his face when he attempted to explain his property situation to him. The Eighth Amendment prohibition of cruel and unusual punishment proscribes wanton infliction of unnecessary pain upon a prisoner by prison officials. However, verbal abuse and harassment do not constitute cruel and unusual punishment as contemplated by the Eighth Amendment, and allegations of such, without more, are insufficient grounds for relief under 42 U.S.C. § 1983. See Collins v. Cundy, 603 F.2d 825 (10th Cir. 1979); Ellingburg v. Lucas, 518 F.2d 1196 (8th Cir. 1975). Furthermore, the Fifth Circuit held that "mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations." Lynch v Cannatella, 810 F.2d 1363, 1376 (5th Cir. 1987) (citing McFadden v. Lucas, 713 F.2d 143, 146 (5th Cir. 1983)). Even if Plaintiff was subjected to verbal abuse and threats

as alleged, this claim does not amount to harm sufficient to constitute a constitutional violation.

Accordingly, Plaintiff's claims that he was verbally harassed and threatened should be dismissed with prejudice as frivolous.

**Property**

Plaintiff filed this claim pursuant to 42 U.S.C. § 1983 of the Civil Rights Act which provides redress for persons "deprived of any rights, privileges or immunities secured by the Constitution or laws of the United States" by a person acting under color of state law. Accordingly, the initial inquiry and threshold concern of the reviewing court is whether Plaintiff's constitutional rights have been violated. See Parratt v. Taylor, 451 U.S. 527, 107 S. Ct. 1908 (1981).

The property of which Plaintiff was allegedly deprived can constitute "property" within the meaning of the Due Process Clause of the Fourteenth Amendment and its loss is worthy of redress if the loss implicates constitutional rights. See id. at 542, 107 S. Ct. at 1916. However, the Fourteenth Amendment is not a font of tort law to be superimposed upon whatever systems may already be administered by the States. See Baker v. McCollan, 433 U.S. 137, 99 S. Ct. 2689 (1979). A constitutional deprivation of property without due process of law, as differentiated from a state tort law claim, must be intentional and plaintiff must allege specific facts which support such a conclusion.

Absent an intentional deprivation of property where the charge only supports a negligent failure by defendants, a constitutional deprivation does not lie. "[T]he Due Process Clause is simply not implicated by a negligent act of an official causing

unintended loss of or injury to life, liberty or property." <u>Daniels v. Williams</u>, 474 U.S. 327, 328, 106 S. Ct. 662, 663 (1986).

Moreover, even in instances where intentional deprivation occurs where an adequate state post-deprivation remedy is available, the Due Process Clause is not implicated. <u>See</u> <u>Hudson v. Palmer</u>, 468 U.S. 517, 533, 104 S.Ct. 3194, 3204 (1984), <u>on remand</u>, 744 F.2d 22 (4th Cir. 1984); <u>Marshall v. Norwood</u>, 741 F.2d 761, 764 (5th Cir. 1984). Mere assertions of intentionality are not enough in the absence of specific facts supporting the assertions and "even if the taking were intentional, the state could afford the [plaintiff] due process by providing a post-deprivation remedy for the redress of the unforeseeable, unauthorized injury... alleged." <u>Lewis v. Woods</u>, 848 F.2d 649, 652 (5th Cir. 1988). Louisiana law provides Plaintiff the opportunity to seek redress for his loss, whether intentional or negligent. <u>See</u> La. Civ. Code art. 2315.

Accordingly, Plaintiff has failed to state a claim cognizable under Section 1983.

**Classification**

Plaintiff claims that when he was transferred to David Wade Correctional Center, he was immediately placed on administrative segregation. He claims that a few days later he was reassigned to disciplinary detention/extended lockdown. These are not claims that this court can resolve. Federal courts should not, under the guise of enforcing constitutional standards, assume the superintendence of state prison administration. <u>See</u> <u>Jones v. Diamond</u>, 636 F.2d 1364, 1368 (5th Cir. 1981) (en banc) (overruled on other grounds). Thus, this court accords state prison administrators wide-ranging deference to

adopt and to execute policies and practices that are needed to maintain and preserve order, discipline and security in prison.  See Bell v. Wolfish, 441 U.S. 520, 547 (1979).

The classification of prisoners is such a practice that is left to the discretion of prison officials.  See McCord v. Maggio, 910 F.2d 1248, 1250 (5th Cir. 1990).  "It is well settled that '[p]rison officials must have broad discretion, free from judicial intervention, in classifying prisoners in terms of their custodial status'."  McCord, 910 F.2d at 1250 (quoting Wilkerson v. Maggio, 703 F.2d 909 (5th Cir. 1983)).

In Louisiana, the classification of prisoners is the duty of the Department of Corrections and an inmate, such as Plaintiff, has no right to a particular classification.  In addition, "speculative, collateral consequences of prison administrative decisions do not create constitutionally protected liberty interests."  Luken v. Scott, 71 F.3d 192, 193 (5th Cir. 1995) (citing Meachum v. Fano, 427 U.S. 215, 299 n.8, 96 S. Ct. 2532, 2540 n.8 (1976)).

Accordingly, Plaintiff's claims regarding his classification are frivolous because they lack an arguable basis in law and in fact, and they should be dismissed with prejudice as frivolous.

**Administrative Remedy Procedure**

Plaintiff claims he was denied due process in the administrative remedy procedure. He claims he did not receive a response to his second step grievance within the 45-day period and as a result he continued to suffer and develop medical issues.  Inmates do not have a constitutionally protected right to a prison administrative grievance procedure.  See Oladipupo v. Austin, et al., 104 F.Supp.2d 626 (United States District Court, Western

District of Louisiana 4/24/00); <u>Brown v. Dodson, et al.</u>, 863 F. Supp. 284 (United States District Court, Western District of Virginia 6/2/94); <u>Flick v. Alba</u>, 932 F.2d 728, 729 (8th Cir. 1991).

A prison official's failure to comply with a state administrative grievance procedure is not actionable under Section 1983 because a state administrative grievance procedure does not confer any substantive constitutional right upon prison inmates. <u>Mann v. Adams</u>, 855 F.2d 639, 640 (9th Cir. 1988), <u>cert. denied</u>, 488 U.S. 898, 109 S.Ct. 242, 102 L.Ed.2d 231. Furthermore, state administrative grievance procedures are separate and distinct from state and federal legal procedures. Thus, a prison official's failure to comply with state administrative grievance procedures does not compromise an inmate's right of access to the courts. <u>Flick</u>, <u>supra</u>. Thus, insofar as Plaintiff alleges that the Defendants failed to comply with the prison administrative grievance procedure, those allegations, standing alone, do not provide an arguable basis for recovery under Section 1983.

Accordingly, these claims regarding the administrative remedy procedure should be dismissed with prejudice as frivolous.

**Conditions of Confinement**

Plaintiff claims the water in the cell blocks is contaminated with a rust colored substance. He claims he has developed a skin fungus because of the contaminated water. Plaintiff also claims he is being denied proper exercise opportunities because he is on restricted yard and recreation for several months at a time. He claims he is only allowed outside recreational opportunities for 50 minutes on weekends if staff is available. He

claims he has developed depression because of the prolonged deprivation of outside exercise.

Plaintiff filed these claims pursuant to 42 U.S.C. § 1983 of the Civil Rights Act which provides redress for persons "deprived of any rights, privileges or immunities" by a person acting under color of state law. The particular right protected under 42 U.S.C. § 1983 in matters which concern alleged unconstitutional conditions of confinement is the Eighth Amendment prohibition against cruel and unusual punishment. Under the Eighth Amendment, prison officials are required to provide humane conditions of confinement, ensuring that inmates receive adequate food, clothing, shelter and medical care, and must take reasonable measures to guarantee safety of inmates. See Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970 (1994).

An Eighth Amendment claim has two required components. See Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321, 2324 (1991). First, the deprivation alleged must be sufficiently serious. See id., 111 S. Ct. at 2324. "[O]nly those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave" to constitute cruel and unusual punishment. Id., 111 S. Ct. at 2324 (quoting Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399 (1981)). Furthermore, this court should consider the duration and the totality of the specific circumstances that constituted the conditions of Plaintiff's confinement. Palmer v. Johnson, 193 F.3d 346 (5th Cir. 1999).

Second, the prison official must have acted with a sufficiently culpable state of mind. See id. at 305, 111 S. Ct. at 2328; Farmer, 511 U.S. at 838, 114 S. Ct. at 1979. In prison condition of confinement cases, that state of mind is deliberate indifference, which

the Supreme Court recently defined as knowing of and disregarding an excessive risk to inmate health or safety. See id., 114 S. Ct. at 1979.

In this case, after a thorough review of Plaintiff's complaint and amended complaint, read in a light most favorable to him, the court finds that the facts alleged do not support a finding that the Defendants' conduct was sufficiently harmful enough to deprive him of life's basic necessities. See Wilson, 501 U.S. at 298, 111 S. Ct. at 2324.

After considering the duration and the totality of the specific circumstances that constituted the conditions of Plaintiff's confinement, this court finds that the facts alleged do not support a finding that the Defendants' conduct was sufficiently harmful enough to deprive him of life's basic necessities. See Wilson, 501 U.S. at 298, 111 S. Ct. at 2324. Thus, Plaintiff's claim has failed to satisfy the first requirement of an Eighth Amendment claim.

Furthermore, the water condition described by Plaintiff, while unpleasant, does not rise to the level of a constitutional violation. He has failed to allege that the condition of the water was done for the purpose of punishing inmates or resulted from an official policy or custom. Plaintiff's claim that the water caused his skin fungus is conclusory.

As to Plaintiff's recreation claims, it is well established that recreation restrictions do not deprive an inmate of a protected liberty interest. Malchi v. Thaler, 211 F.3d 953 (5th Cir. 2000). Recreation restrictions do not impose a significant or atypical hardship on a prisoner in relation to the ordinary incidents of prison life. Madison v. Parker, 104 F.3d 765, 768 (5th Cir. 1997). Thus, the conditions alleged do not rise to the level of cruel and unusual punishment.

**Conclusion**

Because Plaintiff filed this proceeding in forma pauperis ("IFP"), if this court finds Plaintiff's complaint to be frivolous it may dismiss the complaint as such at any time, before or after service of process, and before or after answers have been filed. See 28 U.S.C. § 1915(e); Green v. McKaskle, 788 F.2d 1116, 1119 (5th Cir. 1986); Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985). District courts are vested with extremely broad discretion in making a determination of whether an IFP proceeding is frivolous and may dismiss a claim as frivolous if the IFP complaint lacks an arguable basis either in law or in fact. See Hicks v. Garner, 69 F.3d 22 (5th Cir. 1995); Booker v. Koonce, 2 F.3d 114 (5th Cir. 1993); Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827 (1989).

Accordingly;

**IT IS RECOMMENDED** that Plaintiff's civil rights claims seeking monetary, declaratory, and injunctive relief for his allegedly unconstitutional disciplinary board convictions and sentences be **DISMISSED WITH PREJUDICE** as frivolous under 28 U.S.C. § 1915(e) until such time as the Heck conditions are met and that his civil rights claims regarding false disciplinary reports, denial of due process, verbal threats and harassment, property, classification, the administrative remedy procedure, and conditions of confinement be **DISMISSED WITH PREJUDICE** as frivolous under 28 U.S.C. § 1915(e).

## OBJECTIONS

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report

and Recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objection within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendations set forth above, within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking, on appeal, the proposed factual findings and legal conclusions that were accepted by the district court and that were not objected to by the aforementioned party. See Douglas v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

**THUS DONE AND SIGNED**, in chambers, in Shreveport, Louisiana, on this 7th day of October, 2020.

Mark L. Hornsby
U.S. Magistrate Judge